By the Court, Woodruff, J.
It is not denied on the part of the appellant that the defendants, the United' States Express Company, had, under the articles of their association, authority to enter into the act of consolidation with the American Express Company which has given rise to the present controversy, and no question is made of the entire validity of the agreement entered into for that purpose; nor is it doubted that the respective associations, “The United States Express Company,” and “ The American Express Company,” in their respective aggregate or associate capacity, were in all respects bound by the provisions of that agreement.
It appears by the complaint herein, and by the seventh paragraph of the agreement for consolidation set forth in the “ case,” that it was expressly, agreed, on the part of “ The United States Express Company,” that they would take 2,000 shares of stock in the American Express Company, and pay therefor to the latter the sum of two hundred thousand dollars, to be divided as therein specified. To the performance of this stipulation the United *21 States Express Company were unqualifiedly bound. But, for the relief and benefit of. the United States 'Express Company in their associate capacity, as well as for the relief of such of their stockholders as might prefer to withdraw from the association and not become contributors to the funds requisite to enable the latter to perform their agreement, it was also provided as follows,—“ if any Of the stockholders of the United States Express Company shall decline to become purchasers of the stock of the American Express Company, under this contract, and shall, within thirty days after the delivery hereof, give notice to Hamilton Spencer” (the then President of the United States Express Company), “at 170 Broadway, in the'city of New York, who shall, within twenty-four hours after, give the like notice in writing to the parties of the first part,” (seven individuals described in the agreement as trustees of the American Express Company), “at their office, No. 10 Wall street, New York, that they so decline, the parties of the first part- shall become-subscribers for the stock of the United States Express Company, to an amount not exceeding $100,000, held by persons so declining, and shall repay to each the sum he has already paid in on such stock, being the sum of $20 on each share, together with ten per cent, upon such sum paid in, and the stock in said American Express Company which such person would have been entitled to under this contract shaft be issued to Said parties of the first part, upon their paying "the balance, if any remaining to be paid, on the subscriptions to the stock of the United States Express Company.”
The true construction of this agreement has a very important bearing upon the effect of the election afterwards made by Ely, the assignor of the plaintiff herein.
It is observed, therefore, that, irrespective of the stipulation that in a certain contingency the seven trustees would take and pay for stock of declining stockholders to the amount of $100,000, the United States Express Company were bound to take and pay $200,000,' for 2,000 shares of the stock of the other association.
To this they were bound, whatever might be the amount of stock held by their declining stockholders, whether greater or less than the amount of $100,000, which, upon certain conditions, the trustees agreed to take; and they were so bound whether the *22 condition, upon which the trustees should become bound to take any of the stock, was complied with or not.
The obligation assumed by the said trustees was conditional; to bind them to take the stock two things were made essential conditions precedent, viz. that the declining stockholders should, within thirty days, give notice to Hamilton Spencer of their election to decline becoming purchasers of the stock of the American Express Company; and that he, within twenty-four hours thereafter, should give the like notice in writing to the said trustees.
If the stock held by persons so declining amounted to more than $100,000, then the trustees were not bound to take the excess, but the United States Express Company, (composed of the persons who continued to be stockholders under the arrangement), must take and pay for such excess; and if no notice was given to the trustees within the twenty-four hours mentioned in the condition, then the United States Express Company, by the express terms of the agreement, were bound to receive and pay for the whole $200,000 of stock in the American Express Company, unaided by any contribution thereto by such trustees.
The United States Express Company had thus, in its associate capacity assumed a heavy responsibility, looking primarily to its several stockholders for the contributions necessary to enable the Company to perform the agreement, but securing the privilege, (in case any of its stockholders should elect not to become parties to the purchase and contribute accordingly) of calling upon the trustees to aid to the extent of $100,000, by taking stock of declining stockholders to that amount.
The importance of this view of the construction of the agreement is this: that it appears, thereby, that the United States Express Company, in its associate capacity, had a deep interest in the election about to be tendered to the individual stockholders therein, and were in a condition to become parties to such election, when tendered and acted upon by the several stockholders. In the first instance, that Company on the one hand and the individual stockholders making their respective elections on the other, were the proper parties to the contract which was to result from such election.
It is not material, in the views entertained of this case in *23 other respects, to determine whether this Company was bound to give the notice, within the twenty-four hours, to the trustees, or to permit the trustees to take the stock of their declining stockholders without such notice; for if they were so bound, then it is conceived to be quite clear, that, upon a binding election to withdraw being declared by any stockholder, the right of the trustees, to the stock, instantly attached, and the obligation of the Company to permit the trustees to take and pay therefor precluded any revocation of the election so declared.
And if not so bound—and that appears to be a construction best according with the provisions of the agreement—the Company were at liberty to give the notice to the trustees within the twenty-four hours stipulated in the condition, or to forego the benefit of that privilege and perform their agreement, unaided by any contribution from the trustees; and in such case the Company, acting in this respect on behalf of the stockholders, who did elect to continue such and pay their proper contributions, would hold or dispose of the stock, of the declining stockholders, as they thought proper; and in this, there was no technical difficulty founded in the idea of a surrender of the shares to the Company collectively, since the agreement of consolidation itself plainly contemplated the extinction of all the stock of the United States Express Company, and the issue of stock of the American Express Company, in lieu thereof, to such persons as the first named Company, by Dwight and Spencer acting on their behalf, should direct.
In every aspect of the agreement, therefore, it was the United States Express Company, in its associate or aggregate capacity, which had assumed the obligation to pay the $200,000, and, in view of that obligation was interested, primarily and chiefly, if not exclusively, in the election which was about to be offered to the respective stockholders therein. And this rendered it eminently proper to provide that the person who was to receive notice of the election, to be so tendered and declared, should be Hamilton Spencer, the President of the Company, and that he and Dwight, on the behalf of the Company, should direct to whom the stock in the American Express Company should be issued.
Nor is there any difficulty, in this view of the rights and posi *24 tion of the United States Express Company, arising from the fact that it was about to deal and did deal with the individual members of its own association. Whatever difficulty, if any, might exist at law, there is none in equity in regarding the Company as acting in this respect on behalf of, or as in truth consisting of, such stockholders as should continue to hold stock under the agreement for the consolidation, and should contribute thereto.
With this condition of the rights and responsibilities of the United States Express Company, the action of that company, by its Board of Directors, (as appears by the notices issued), was in precise correspondence. By order of the board, Spencer, as President, notified the stockholders of the fact of consolidation and of its material provisions, and offered to each stockholder his election to become a purchaser of stock in the American Express Company under the arrangement, or to decline and return his receipt for the instalment he had paid upon his stock, with the assurance that if, within thirty days, he gave notice in writing to Spencer, at the Company’s Office, the amount of such instalment, with ten per cent, in addition thereto, would be refunded to him. They thus became the direct and immediate parties to the election tendered, and to the offer of repayment. Whether the trustees, of the other company, would be required to make, the repayment or not was not ascertained, and if at all required, the extent, to which the obligation, by the trustees to take to the amount of $100,000, would suffice to cover the stock of declining parties, could not be ascertained. The offer of the election and the offer to repay to the stockholder was, therefore, in this stage of the transaction, a matter simply and only between the Company and its stockholders respectively. And such was in form, substance, and effect, the circular notice issued by the President of the Company, by order of the Board, as set forth in the case herein.
The result of these views seems quite inevitable. The notice sent by the Company to Ely was an unequivocal offer, in which his choice was tendered to him to come in under the new arrangement and share its burdens and responsibilities, with the chance of its profits, or to withdraw from the enterprise, with the assurance that if he declined to become a purchaser of the new stock, and should, within thirty days,. *25 give notice that he so declined, and send back the receipt he held, for the instalment already paid, he should receive the amount of such instalment, with ten per cent, in addition. The acceptance of this offer completed a contract between the parties. Within the thirty days Ely wrote to the President of the Company, in the most unequivocal manner, declining to receive stock in the American Express Company, and electing to receive back the sum of $1,000 (the instalment paid by him), with ten per cent, in addition thereto, and in consummation, on his part, of all that he could do to make his acceptance of the Company’s offer perfect, he returned, to the Company, the receipt held by him, as the voucher for such instalment, and the only evidence in his possession, of his claim to any stock in the Company.
These transactions constituted a contract, binding upon both parties. An offer by the one, duly tendered to the other, and by the latter unconditionally accepted: and from the time of such acceptance the contract was irrevocable, except by mutual assent, Ely, on the one hand, could insist upon its performance by the Company, and for the same reason he was bound, beyond the power,, (of his own mere will,) to retract his acceptance.
Such a condition of things between two individuals would present no question open to discussion. That an offer thus communicated by letter, when accepted by letter, becomes a contract binding according to the terms of' such offer, and binding upon both parties, is not doubtful. Although doubt has formerly been suggested as to the precise moment when an acceptance takes effect, i. e., whether on forwarding the letter of acceptance, or on its receipt by the party making the offer; even that is not now doubtful in this State ’ since the decision of Mactier v. Frith, 6 Wend. 103; and before that decision, it was clear that such offer made and sent, followed by an acceptance duly received, constituted a complete and binding contract, irrevocable by either party.—See cases cited in the above case, Story on Cont’s, § 384, and cases cited in the notes.
It does not appear to us necessary to discuss at length the question, whether the enclosing of the receipt to Ely, with a request to him to sign the power of attorney endorsed thereon, gave Ely any right to revoke his assent to the sale, or indicated *26 any dissent therefrom, by Spencer, on behalf of the Company. In our view, it was a ratification, or rather a recognition of the fact, that the contract was mutually assented to. Though it was not strictly necessary, that any such power of attorney should be signed, it was requested, for the convenience of the Company, and as a suitable voucher to them, in their subsequent use or disposition of the stock. The receipt was not returned to Ely as an opening of the matter for further negotiation. The act and the letter accompanying the receipt, both proceed upon the idea that the contract had been entered into, and'that its actual performance was in the contemplation of the parties. We fully concur in the decision at Special Term upon this point. The act neither gave, nor was intended to give to Ely a right to renounce the election he had made.
Such being the respective rights of the Company and Ely, the stock or the privilege of coming into Ely’s place,- as a subscriber was actually sold by Spencer to Gardner, who paid the sum of $1,100 therefor to the Company. Whether Spencer, as President, had the authority, on behalf of the Company, to make the sale to Gardner or not—he did make such sale, and the Company received the money and adopted the sale. They set it up as their defence herein. It does not lie with Ely or his assignee to deny that authority. So whether it was the duty of Spencer to give the notice to the trustees of the American Express Company within twenty-four hours, and tender the privilege to them, is a question between the trustees and Spencer, or the trustees and the U. S. Express Company. Although the questions were raised on the argument of the appeal, whether Spencer did sufficiently offer the stock to the trustees, and whether he sold it to Gardner by their consent, it is, for the reasons stated, unnecessary for the purposes of the decision to answer them. If by the agreement of consolidation the trustees acquired a right to the stock of a declining stockholder, whether Spencer gave them the written notice or not, then most clearly that right became fixed the moment Ely’s election was duly declared—and if the right of the trustees depended upon,their being notified by Spencer, then a sale, by the Company, without giving the trustees any notice, should not be complained of by such trustees, and was at'the option of the Company. Much more *27 then was the sale to Gardner conclusive upon Ely if the trustees consented thereto.
As before suggested, the Company, in our opinion, acquired a full right to the stock the moment Ely elected to accept the offer which Spencer as President tendered to him, and we now add that after the sale to Gardner, Ely could not retract and claim the stock, whatever may have been the purport of the conversation between Spencer and himself on the 21st of April. In regard to that conversation there is a conflict of evidence. The testimony of the two parties thereto presents it in a very different aspect. The finding of the court does not explicitly state to which of them credence was given, but it will suffice to say, that, for the reasons above stated we quite agree with the conclusion at special term, whichever of the two parties be taken to give the more accurate account of what occurred,
If these views are correct the judgment at special term must be affirmed.
It is proper however to add, that, in relation to the plaintiff, we are entirely agreed that he stands in no better situation, in this controversy, than his assignor Ely would have done. At the time of the alleged sale to him, by Ely, the plaintiff’s agent examined the power of attorney upon the certificate, which Spencer had forwarded to Ely for Ms signature, and mquired the cause of its bemg there, and was then informed by Ely “ M substance of the reason why it was there.” If so, then the plamtiff, by his agent, knew of the very facts wMch under the opmions above expressed, concluded Ely and deprived him of the power to reclaim the stock.
True, Ely says, he also informed him of Ms conversation with Spencer, but as before remarked, that conversation would not avail to reinstate Ely in the ownersMp of the stock, and although, the fact, of a sale to Gardner, was not known to Ely or to the plaintiff’s agent, there was enough to put him on inquiry by wMch he would have learned the true condition of the matter.
The judgment should be affirmed. (a)